IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN ALDERETE JR.,

       Plaintiff,

vs.                                          1:22-cv-00111-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff John Alderete, Jr.'s pro se Motion to

Clarify (Doc. 28), which the Court reads as a motion to remand. This motion was fully briefed on

September 8th, 2022. *See* Docs. 30, 31. The parties consented to my entering final judgment in

this case. Doc. 24. Having meticulously reviewed the entire record and being fully advised in the

premises, I find that the decision of the Administrative Law Judge ("ALJ") is supported by

substantial evidence and that the correct legal standards were applied. I therefore DENY Mr.

Alderete's motion.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[2] is supported by substantial evidence and whether the correct legal standards were

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

John Alderete, Jr. was born in 1969 and has his GED. AR 59, 36.[4] He has performed a range of skilled construction work, including framing and drywall, and had worked most recently through a series of temp agencies. AR 36–39, 239–45. Mr. Alderete filed an application for Supplemental Security Income ("SSI") on November 3, 2018, alleging disability since January 1, 2010, due to paranoia, anger, depression, mood swings, confusion, anxiety, and alcoholism. AR

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 16-1 through 16-11 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

61–62. The Social Security Administration ("SSA") denied his claim initially and on

reconsideration. AR 61–88. Mr. Alderete requested a hearing before an ALJ. AR 101–04. On

June 4, 2020, ALJ Michael Leppala held a hearing. AR 29–58. ALJ Leppala issued an

unfavorable decision on July 21, 2020. AR 14–23.

At step one, ALJ Leppala found that Mr. Alderete had not engaged in substantial, gainful

activity since November 3, 2018, the date of his initial application. AR 16. At step two, the ALJ

found that Mr. Alderete's persistent depressive disorder, major depressive disorder, generalized

anxiety disorder, social anxiety disorder, paranoid personality disorder, impulse disorder, and

alcohol use disorder were severe impairments, but the ALJ found no severe physical

impairments. AR 16–17. At step three, the ALJ found that none of Mr. Alderete's impairments,

alone or in combination, met or medically equaled a Listing. AR 17–18. As part of this analysis,

the ALJ found that Mr. Alderete had moderate limitations in understanding, remembering, or

applying information; interacting with others; concentrating, persisting, or maintaining pace; and

adapting or managing himself. *Id.* Because the ALJ found that none of the impairments met a

Listing, the ALJ assessed Mr. Alderete's RFC. AR 19–21. The ALJ found Mr. Alderete had the

RFC to:

> [P]erform a full range of work at all exertional levels but with the following
> nonexertional imitations. He can: understand, carry out, and remember simple
> one-to-two step instructions and make commensurate work-related decisions;
> respond appropriately to supervision, co-workers, and work situations; deal with
> routine changes in work setting; and maintain concentration, persistence, and pace
> for up to and including two hours at a time with normal breaks throughout a
> normal workday. He is limited to simple, routine, and repetitive tasks and
> occasional interaction with co-workers, supervisors, and the general public.

AR 19.

At step four, ALJ Leppala concluded that Mr. Alderete was capable of performing his

past relevant work as a construction laborer, AR 21, thereby finding him not disabled.

Alternatively, at step five, ALJ Leppala found that Mr. Alderete could perform other jobs that exist in significant numbers in the national economy, including hand packager and dishwasher. AR 21-22. The ALJ thus also found Mr. Alderete not disabled at step five. AR 22–23.

Mr. Alderete requested that the Appeals Council review the ALJ's unfavorable decision. AR 8–9, 141–47. On November 2, 2021, the Appeals Council denied the request for review. AR 1–7. Initially, Mr. Alderete timely filed his appeal in the wrong jurisdiction on January 6, 2022. Doc. 1 at 4–5.[5] After that case was dismissed without prejudice, he filed in this Court on February 16, 2022. Doc. 1.[6]

## IV.    Mr. Alderete's Claims

Because Mr. Alderete is proceeding *pro se*, the Court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court understands Mr. Alderete to argue that the ALJ erred by: not considering records from all medical professionals; dismissing records because they were based largely on Mr. Alderete's subjective reporting; failing to adequately develop the record; and failing to consider testimony by Mr. Alderete's family.[7] For the following reasons, I find that none of Mr. Alderete's claimed errors have merit.

---

[5] A claimant has 60 days to file an appeal. 42 U.S.C. § 405(g). The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

[6] Mr. Alderete did not timely file his appeal in this Court. Both the Supreme Court and the Tenth Circuit have held that § 405(g)'s sixty-day time period for seeking judicial review of a "final decision of the Commissioner of Social Security" is a statute of limitations rather than a jurisdictional bar. *See, e.g.*, *Bowen v. City of New York*, 476 U.S. 467, 478–81 (1986); *Gossett v. Barnhart*, 139 F. App'x 24, 25 n.1 (10th Cir. 2005). A statute of limitations is an affirmative defense that is waived if not asserted. *See Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1174–75 (10th Cir.1998) (Because timely filing is not a jurisdictional prerequisite, "it is best likened to a statute of limitations and is therefore subject to waiver . . . ."). The Commissioner did not raise Mr. Alderete's untimely filing as a defense. *See* Doc. 30. The Court therefore does not address this issue.

[7] Mr. Alderete also complains that the ALJ may have been biased by the record of a CDI investigation in Mr. Alderete's claim. Doc. 28 at 6–7. This is mere speculation and does not

## V.      Analysis

### a.  The ALJ adequately considered records from all medical professionals.

Mr. Alderete complains that "the ALJ did not give sufficient weight to ALL of my treating physician records . . . and especially no consideration to my older relevant medical injuries that include traumatic brain injury." Doc. 28 at 2. However, although ALJ Leppala found the records of Mr. Alderete's traumatic injuries "too remote in time to be of significant probative value as to the period beginning with the application date" because they "pre-date[d] the application date by more than one year," he nonetheless considered the evidence. AR 16. The Court takes the ALJ at his word and finds no error. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

To the extent that Mr. Alderete complains that the ALJ considered but improperly disregarded evidence of Mr. Alderete's traumatic injuries, the Court also finds no error. Though the old medical records showed injuries that may have had, as he alleges, "life altering" effects on Mr. Alderete and may underlie his current alleged impairments, the Court may not reweigh this evidence. *See* Doc. 28 at 2–4; *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). The ALJ's stated reason for disregarding these records—their age, which ranges from four to twenty-two years before Mr. Alderete's alleged onset date, *see* AR 348–77—is sufficient explanation for giving them little weight. *Cf. Dausey v. Colvin,* 2013 WL 2635066 (W.D. Wash. June 11, 2013) (holding that even an unexplained omission of a record from six years before claimant's onset

---

merit legal analysis. Likewise, Mr. Alderete complains that the ALJ prevented his representative from cross-examining the vocational expert. *Id.* at 9. However, the hearing transcript clearly shows that ALJ Leppala merely cut short a question that would have required the expert to opine on Mr. Alderete's capacity to work, an area that is the exclusive province of the ALJ. AR 55–56. Finally, Mr. Alderete complains that the ALJ did not consider non-severe impairments, but provides no specific factual allegations related to this complaint. Doc. 28 at 10.

date was not error). The ALJ did not err in his treatment of these medical records.

    **b.  The ALJ did not err by giving limited weight to medical records based partly on subjective reporting.**

       Though it is never squarely stated, the Court understands Mr. Alderete to complain that the ALJ erred by giving limited weight to several medical records because they were "based in large part on [Mr. Alderete's] own report . . . ." AR 21.[8] Persuasive precedent suggests that an ALJ may not reject medical opinions provided by mental health professionals solely because they are based on a claimant's subjective reporting. *See Thomas v. Barnhart*, 147 F. App'x 755, 759–60 (10th Cir. 2005) (unpublished) (rejecting psychological assessment based on subjective responses substitutes ALJ's judgment for psychologist's); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness"); *see also Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360–62 (4th Cir. 2023) (subjective statements by claimants should be "treated as evidence *substantiating*" impairments like major depressive disorder and fibromyalgia). However, the ALJ in this case did not reject a medical opinion solely on this basis, and so did not commit error in this way.

       Mr. Alderete identifies the consultative exam, AR 321–25, as one of the records relevant

---

[8] For instance, Mr. Alderete complains that "the ALJ didn't give sufficient weight to medical facts," Doc. 28 at 1, and, a few pages later, states that "[t]he judge basically says any medical records where I answer the questions, share symptoms with my doctors . . . means that I am a liar. I don't know how else a therapist or doctor makes these assessments without asking questions about mental functioning and thinking." *Id.* at 5. Later, in a section that complains, *inter alia*, that the ALJ "did not consider the observations of non physician medical professionals," *id.* at 10, Mr. Alderete states that the ALJ "said the consultative [exam] was unpersuasive because [it was based in] large part of my own report of my symptoms," *id.* at 15, and later states that where he "simply answer[ed] the questions about [his] symptoms . . . the ALJ suggests that [the medical records] are not persuasive because it was self reporting." *Id.* at 17. Mr. Alderete doesn't "understand how else [he] would explain [his] symptoms as a patient/claimant." *Id.*.

to this complaint, Doc. 28 at 15. This exam was conducted by Amy DeBernardi, Psy. D., an examining physician. AR 321. The ALJ found the "examiner's opinion unpersuasive" both because it was "based in large part on [Mr. Alderete's] own report" and also because it was "too vague to be meaningfully assessed for consistency."[9] AR 21. Although the explanation that the report was too vague is cursory, it does assess consistency, one of the two "most important factors" an ALJ considers when evaluating a medical opinion. 20 C.F.R. § 416.920c(b)(2). Therefore, the ALJ did not reject the consultative examiner's opinion solely because it was based on Mr. Alderete's subjective reports; rather, he considered both the supportability and consistency of the opinion, as required by regulation. *See id.*; *see also Houston v. Colvin*, 180 F. Supp. 3d 877, 888–89 (D.N.M. 2016).

Mr. Alderete also briefly references assessments made by his therapist, Quena Eche, LMHC. Doc. 28 at 5; AR 326–27. The ALJ brushed aside the bulk of the therapy notes in the record solely because they "reflect little in the way of objective observations." AR 20. However, these therapy notes were not "a statement . . . about what [Mr. Alderete] can still do despite [his] impairment[s]" or a statement about his "impairment-related limitations or restrictions," and so did not constitute a medical opinion. 20 C.F.R. § 416.913(a)(2). Thus, although the ALJ still must articulate his consideration of this "other medical evidence," there is no prohibition against an ALJ rejecting this type of evidence if it is based on subjective reporting rather than objective observations. *Id.* at § 416.913(a)(3). The ALJ did not err by assigning limited weight to these

---

[9] Respondent argues that, because Dr. DeBernardi "candidly admits" that her findings were based on Mr. Alderete's opinion, this record is not an opinion from a medical source. Doc. 30 at 11–12 (citing *Foy v. Kijakazi*, 2022 WL 1288474, at 12-13 (D.N.M. Apr. 29, 2022) (unpublished)). ALJ Leppala did not draw this distinction, and the Court disagrees that the reasoning in *Foy*, which concerns assessments of physical impairments that could have been assessed through objective means by a qualified practitioner, applies with equal force to a mental health assessment by a licensed psychologist. *See* 2022 WL 1288474 at 13.

records. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).

### c.   The ALJ adequately developed the record.

Mr. Alderete complains that the ALJ "did not develop [his] medical record" because the

ALJ "could have asked [his] medical sources for clarity or [have sent him] elsewhere for a

different examination." Doc. 28 at 10, 16. Because the record contains evidence that, as a whole,

is sufficient to allow the ALJ to determine Mr. Alderete's claim, *see* 20 C.F.R. § 416.919a(b),

and because Mr. Alderete does not allege specific deficiencies that could have been addressed

through further inquiry, the Court finds that the ALJ adequately developed the record.

Although the claimant in a social security case bears the burden to prove disability, the

ALJ is "responsible . . . to ensure that an adequate record is developed during the disability

hearing consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.

1997) (quotation marks and citation omitted). This responsibility is "heightened" when a

claimant appears before the ALJ without counsel. *Madrid v. Barnhart*, 447 F.3d 788 (10th Cir.

2006) (citing several Tenth Circuit cases).[10] Because Mr. Alderete was represented by his

partner, Monique Poncho-Alderete, who was previously employed by the Social Security

Administration but is not an attorney, the ALJ's responsibility was heightened in this case. AR

31–32; *cf. Sneed v. Barnhart*, 88 F. App'x 297, 300 (10th Cir. 2004) (holding that a

representative with some relevant experience was not comparable to an attorney). Nonetheless,

---

[10] In the Tenth Circuit, it appears that this heightened responsibility applies both when a claimant
appears pro se and, as is the case here, when a claimant is represented by a non-attorney. *See
Miracle v. Barnhart*, 187 F. App'x 870, 874 (10th Cir. 2006) ("The duty is particularly acute
where the claimant . . . is represented by a non-attorney."); *Summers v. Berryhill*, 2019 WL
1051016, at *9 (D.N.M. Mar. 5, 2019); *Gragg v. Astrue*, 2010 WL 3259780, at *5 (W.D. Okla.
July 12, 2010); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("The ALJ must be
'especially diligent' when the claimant is unrepresented or has only a lay representative"); *Sims
v. Apfel*, 530 U.S. 103, 112 (2000) (suggesting that the rationale that supports the heightened
responsibility includes claimants "represented by non-attorneys").

the Court finds that ALJ Leppala complied with his heightened responsibility to develop the record.

An ALJ's duty to develop the record is two-fold. At the benefits hearing, an ALJ must ask questions sufficient "to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (quotation marks and citation omitted). Subsequently, "the ALJ has the duty to obtain pertinent, available medical records which come to his attention during the course of the hearing." *Madrid*, 447 F.3d at 790 (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)) (alterations omitted). Because there is no indication in plaintiff's briefing or in the administrative record that the ALJ asked insufficient questions, the Court considers only whether the ALJ obtained the medical records necessary to decide the case, and whether the ALJ erred by not ordering a consultative examination to fill any evidentiary gaps.[11]

The ALJ's duty to develop the record ensures that an ALJ is presented with "sufficient evidence . . . to make an informed decision." *Colon v. Colvin,* 660 F. App'x 867, 870 (11th Cir. 2016). Where the record includes sufficient information to make a disability determination, there is "no need to further develop the record . . . ." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

In this case, although the probative evidence in the record was winnowed by the rejection

---

[11] The regulations previously made clear that this standard extended to recontacting medical sources. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing a previous version of 20 C.F.R. § 416.912(e)(1)). The current version of this section contains no such language, and the current section that governs "incomplete or inconsistent evidence" does not specify when an ALJ might be required to recontact a medical source rather than clarifying the record through other means. *See* 20 C.F.R. § 416.920b(b).

of records based on Mr. Alderete's subjective reporting, the Court finds that the evidence relied

on by the ALJ meets the bar of "substantial evidence," and thus was sufficient. In assessing Mr.

Alderete's alleged impairments at step four, ALJ Leppala explicitly considered several clinical

observations of Mr. Alderete's mood, presentation, and mental capacity, alongside reports that

indicated only fleeting suicidal ideation and paranoia. AR 20. The Court agrees with Mr.

Alderete that observations of his mood and grooming while receiving medical attention are,

while objective, not greatly probative of his alleged mental impairments. *See Theodore F. v.*

*Comm'r of Soc. Sec. Admin.*, 2019 WL 4262517, at *3 (D. Or. 2019) (treatment notes that show

calm and cooperative affect are not inconsistent with ongoing struggles with anxiety, anger, and

depression). Nonetheless, the ALJ also pointed to records that showed that his "[t]hought content

was [mostly] normal," his "[t]hought processes were normal," and that his "[i]nsight and

judgment appear to have been at least fair." AR 20. This evidence, alongside evidence in the

record that the ALJ did not cite but states that he considered, AR 19, is "more than a mere

scintilla," and thus is sufficient for the purpose of this review. *Langley*, 373 F.3d at 1118; *see*

*also Watts v. Berryhill*, 705 F. App'x 759, 761–62 (10th Cir. 2017) (an ALJ need not discuss

every piece of evidence and will be taken "at his word" where he states that he considered all

medical evidence in the record). Because the administrative record provided substantial evidence

on which the ALJ based an informed decision, ALJ Leppala fulfilled his duty to develop the

record.

    **d.   The ALJ's failure to articulate his consideration of statements by Mr. Alderete's family, if error, was harmless.**

    Mr. Alderete complains that "[f]amily statements are not considered although these are

the people who know [him] best and can describe [his] actions better than anyone else." Doc. 28

at 20. Because the ALJ explicitly noted that he considered these "lay observations" in

formulating his findings, AR 21 n.3, the Court reads Mr. Alderete as complaining that the ALJ

erred by not articulating how he considered the family's statements. The Commissioner argues

that under the pertinent regulations, the ALJ is "not required to articulate how [he] considered

evidence from nonmedical sources . . . ." Doc. 30 at 6 n.4 (citing 20 C.F.R. § 416.920c(d)). The

Court need not decide whether and to what extent the ALJ was required to articulate how he

considered the lay testimony in this case. The testimony of Mr. Alderete's family is largely

cumulative of his own testimony, which the ALJ discussed during his step four analysis. *See* AR

19. Therefore, any error the ALJ may have committed by failing to discuss the family testimony

was harmless. *See Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished).

The administrative record contains written testimony by Mr. Alderete's partner, Monique

Poncho-Alderete, AR 190–200, 217, 230–38, 245, 294–97; his mother, AR 298–99; his son,

Jonathan, AR 300; and his daughter, Dominique, AR 301–02. This testimony substantially

corroborates and is cumulative of Mr. Alderete's own testimony as to his impairments. The ALJ

summarized Mr. Alderete's testimony as part of his step four analysis:

> [Mr. Alderete] alleges disability due to mental symptoms, including paranoia,
> anger, depression, memory problems, and the effects of head trauma. As a result
> of his alleged symptoms, he alleges limitations in memory, completing tasks,
> concentration, understanding, following instructions, and getting along with
> others. He states he does not handle stress or changes in routine well. He states he
> does not leave the house and wants to do little or nothing.

AR 19. The ALJ found that although Mr. Alderete's medically determinable impairments could

cause his symptoms, he did not believe that Mr. Alderete's statements regarding the intensity,

persistence, and limiting effects of his symptoms were entirely consistent with the medical

evidence and other evidence in the record. *Id.*

The testimony of Mr. Alderete's family adds details to Mr. Alderete's testimony,

including affecting accounts of the impact that Mr. Alderete's struggles have had on his life and

family. However, were that testimony to be boiled down to a list of alleged symptoms and limitations, it would read very much the same as the above passage summarizing Mr. Alderete's testimony, and would be discounted by "the same evidence discussed by the ALJ in discounting [Mr. Alderete's] allegations . . . ." *Miranda R. A. v. Kijakazi*, 2022 WL 1005303, at *4 (N.D. Okla. Apr. 4, 2022) (citing *Best-Willie v. Colvin*, 514 F. App'x at 736). The ALJ's failure to discuss the family testimony therefore was harmless, and the Court will not remand on this basis.

**VI.    Conclusion**

Because ALJ Leppala's decision on Mr. Alderete's claim is supported by substantial evidence, applied the correct legal standards, and any potential error was harmless, the Court must affirm.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Clarify (Doc. 28) is DENIED and the Commissioner's final decision is AFFIRMED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent